LYNCH MURPHY MCLANE LLP
MICHAEL R. MCLANE OSB No. 904435
SHANNON MCCABE OSB No. 143182
1000 SW Disk Drive
Bend, OR  97702
Telephone: (541) 383-5857
Facsimile:  (541) 383-3968
mmclane@lynchmurphy.com
smccabe@lynchmurphy.com

BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK*
STEPHEN M. DUVERNAY*
400 Capitol Mall, Suite 2530
Sacramento, CA  95814
Telephone: (916) 447-4900
Facsimile:  (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com
*Pro hac vice applications to be submitted

Attorneys for Plaintiffs
RALPH MARK NEWTON AND FIREARMS POLICY COALITION, INC.

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| RALPH MARK NEWTON; FIREARMS POLICY COALITION, INC.,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br><br>UNITED STATES OF AMERICA; MERRICK GARLAND, in his Official Capacity as Attorney General of the United States; CHRISTOPHER A. WRAY, in his Official Capacity as Director of the FEDERAL BUREAU OF INVESTIGATION; and MARVIN RICHARDSON, in his Official Capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives,<br><br>　　　　　　　　Defendants. | Case No.: 1:22-CV-00150<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, OR OTHER RELIEF** |

Plaintiffs Ralph Mark Newton and Firearms Policy Coalition, Inc. complain of Defendants the United States of America; Merrick Garland, in his official capacity as Attorney General of the United States; Christopher A. Wray, in his official capacity as Director of the Federal Bureau of Investigation; and Marvin Richardson, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, and alleges:

## INTRODUCTION

1. Plaintiffs bring this lawsuit to challenge Defendants' erroneous denial of Ralph Mark Newton's application to purchase a firearm and their policies and practices that shift the burden of proof as to a firearm transfer applicant's legal eligibility to possess and acquire firearms from the government to the individual.

2. On the day after Christmas in 1981, Newton was traveling through the Yosemite Valley with his two nephews. That night, Newton left his cabin and headed to the Yosemite Lodge at the Falls to have a drink. While at the bar, Newton got into a physical altercation with two strangers; he was arrested later that night by the United States Park Police. Newton was eventually convicted of two federal misdemeanors (disorderly conduct and assault) for his role in the bar fight. He paid a $50 fine, was sentenced to six days in jail, and placed on one year's probation.

3. Nearly four decades later, Newton attempted to purchase a firearm from a dealer in Grants Pass, Oregon. The transaction was denied after the National Instant Criminal Background Check System flagged Newton's 1981 convictions as "potentially prohibitive." The ostensible rationale for the denial was that the convictions *could* qualify as misdemeanor crimes of domestic violence – thereby rendering Newton ineligible to purchase a firearm under 18 U.S.C. § 922(g)(9) – despite there being no evidence in the background check system suggesting that was the case.

4. That denial was erroneous. Newton is not a domestic violence misdemeanant. Newton had never met the two people he quarreled with before he walked into the bar that night. Neither of the two federal offenses arising out of that skirmish concerns domestic violence on its

face, and nothing in Defendants' records suggests that the combatants had a relationship with Newton (like a spouse, parent, guardian, or co-parent) that would render the offenses any form of "domestic violence."

5. Indeed, Defendants do not seriously contend that Newton was, in fact, convicted of a misdemeanor crime of domestic violence. But Defendants claim that Newton's record from the 1981 convictions "reveal[ed] a potentially prohibitive arrest lacking victim relationship"—that is, the FBI's criminal records did not affirmatively show whether Newton was either combatant's spouse, parent, guardian, co-parent, or cohabitant. Defendants then put the burden on Newton to prove that his convictions were not prohibiting by providing documentation contemporaneous with his arrest showing that the incident did not involve domestic violence. This, of course, was impossible: Court records from the 40-year-old misdemeanors have long been destroyed.

6. Defendants' backwards approach here violated Newton's Second Amendment rights. The Second Amendment secures a fundamental right to keep and bear arms. Defendants' conduct and denial of Newton's acquisition of a firearm is categorically unconstitutional because they have completely denied him—a person not prohibited from exercising his Second Amendment rights—from acquiring firearms for self-defense in the home. Because the right to keep and bear arms is a fundamental, individual right, it is the government's burden to establish that an individual is prohibited from exercising that right. "Assuming that [Newton] is not disqualified from the exercise of Second Amendment rights, the [Defendants] must permit him to" acquire and possess a firearm for self-defense in the home and other lawful purposes. *District of Columbia et al. v. Heller*, 554 U.S. 570, 635 (2008). By requiring instead that Newton demonstrate that he is not prohibited from possessing or receiving a firearm, Defendants inverted the constitutional framework. As a result, Newton is suffering an ongoing Second Amendment violation so long as he is prevented from purchasing and possessing a firearm for self-defense and all lawful purposes.

7.      And because Defendants erroneously denied Newton's right to purchase a firearm, Newton is entitled to relief under 18 U.S.C. § 925A.  The Court should direct Defendants to correct the erroneous information in the federal background check system to reflect (a) that Newton has not been convicted of a misdemeanor crime of domestic violence and, (b) since the background check revealed no other disqualifying information, that the firearm transfer be approved.

## JURISDICTION AND VENUE

8.      This case raises questions under the Constitution of the United States and 18 U.S.C. § 925A.  This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§1331, 1343, 1346, 2201, 2202; 18 U.S.C. §925A; and 42 U.S.C. §1983 and §1988.  Assignment to the Medford Division is appropriate because a substantial part of the events giving rise to this lawsuit occurred in Josephine County, where Newton resides.

9.      Venue is proper under 28 U.S.C. § 1391(e)(1)(B) and (C) because a substantial part of the events and omissions giving rise to the claim occurred in this district, and Newton resides in the district.

## THE PARTIES

10.     Plaintiff Ralph Mark Newton is an individual citizen of the State of Oregon and of the United States who resides in Josephine County, Oregon.  Newton is a member of Plaintiff Firearms Policy Coalition, Inc. ("FPC").

11.     Plaintiff FPC is a 501(c)(4) non-profit organization incorporated under the laws of Delaware with a place of business in Clark County, Nevada.  Plaintiff FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs.  The purposes of FPC include defending and promoting the People's rights—especially the fundamental, individual Second Amendment right to keep and bear arms—advancing individual liberty and restoring freedom.  FPC represents its members—who include gun owners, prospective gun owners, and others—and brings this action on behalf of them, including Plaintiff Newton.  FPC's member, Plaintiff Newton, and others like

him, have been and will continue to be adversely and directly harmed by Defendants' administration, implementation, and enforcement of the laws, and related regulations, policies, practices, and customs challenged herein and will otherwise remain so adversely and directly affected under Defendants' policies and practices, which prevent them from exercising their fundamental rights and, in the absence of judicial relief, expose them to serious criminal penalties for so doing.

12. Defendant United States of America is the federal sovereign. The United States has expressly waived its sovereign immunity for suits brought under 18 U.S.C. § 925A.

13. Defendant Merrick Garland is sued in his official capacity as the Attorney General of the United States of America. As Attorney General, Defendant Garland is responsible for executing and administering the laws, customs, practices, and policies of the United States, and is currently enforcing the laws, customs, practices, and policies complained of in this action.

14. Defendant Christopher A. Wray is sued in his official capacity as the Director of the Federal Bureau of Investigation. As Director, Defendant Wray is responsible for executing and administering the laws, customs, practices, and policies of the FBI, and is currently enforcing the laws, customs, practices, and policies complained of in this action.

15. Defendant Marvin Richardson is sued in his official capacity as the Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives. As Acting Director, Defendant Richardson is responsible for executing and administering the laws, customs, practices, and policies of BATFE, and is currently enforcing the laws, customs, practices, and policies complained of in this action.

16. Congress has unequivocally waived sovereign immunity for Plaintiffs' constitutional claims seeking declaratory and injunctive relief against Defendants Garland, Wray, and Richardson in 5 U.S.C. § 702. *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525–26 (9th Cir. 1989).

## GENERAL ALLEGATIONS

17. "Federal law forbids certain people—such as convicted felons, persons committed to mental institutions, and drug users—to ship, possess, and receive firearms." *Johnson v. United States*, 576 U.S. 591, 593 (2015) (citing 18 U.S.C. § 922(g)). Included in these prohibitions are individuals who have "been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9).

18. A "misdemeanor crime of domestic violence" is a misdemeanor that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." 18 U.S.C. § 921(a)(33)(A)(i)–(ii). For this prohibition to apply, federal law requires (1) that the individual be represented by counsel (or effectively waived the right to counsel), and (2) that the case was tried by a jury (or the individual effectively waived the right to a jury trial). *Id.*, subd. (a)(33)(B).

19. Ralph Newton is not a domestic violence misdemeanant, nor is he otherwise prohibited by federal law from shipping, possessing, or receiving firearms. This lawsuit stems from Defendants' denial of Newton's application to purchase a firearm after the National Instant Criminal Background Check System ("NICS") flagged criminal records that the federal government claims *could potentially* prohibit Newton from possessing firearms under federal law.

20. On December 26, 1981, Newton was traveling to Yosemite Valley with his two nephews. That night Newton left his cabin and headed to the Yosemite Lodge at the Falls to have a drink. While at the bar, Newton got into a physical altercation with two strangers, and he was arrested later that night by the United States Park Police. Newton was eventually convicted of two misdemeanors for his role in the bar fight.

21. The first involved the federal misdemeanor crime of "disorderly conduct" under 36 C.F.R. § 2.7(1), which defined disorderly conduct to include "[e]ngag[ing] in fighting or in threatening, violent, or tumultuous behavior" "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof[.]"  Section 2.7 was renumbered without substantive change in 1983 to 36 C.F.R. § 2.34.  *General Regulations for Areas Administered by the National Park Service*, 48 Fed. Reg. 30252, 30252, 30270–71 (June 30, 1983).

22. The second involved the federal misdemeanor crime of assault under 18 U.S.C. § 113(d), which prohibited "[a]ssault by striking, beating, or wounding" within the "territorial jurisdiction of the United States," which was then punishable "by a fine of not more than $500 or imprisonment for not more than six months, or both."  18 U.S.C. § 113(d) (1983).  The statute has since been amended and renumbered; former subdivision (d) is now 18 U.S.C. § 113(a)(4).

23. Newton was placed on probation for one year, fined $50 for the disorderly conduct charge, and sentenced to six days in jail for the assault charge.

24. Newton is a law-abiding, responsible citizen and resident of Oregon, who is entitled by the Second Amendment to keep and bear arms.  Indeed, Newton possesses a concealed handgun license issued by the Josephine County Sheriff's Office.

25. In 2019, Newton tried to purchase a Sig Sauer 9 mm handgun at Fox Firearms in Grants Pass, Oregon.  The transaction was initially denied because Newton's California summary criminal history record erroneously identified one of Newton's 1981 convictions as punishable by a term exceeding one year (e.g., a felony), thus prohibiting him from possessing a firearm under 18 U.S.C. sections 921(a)(20) and 922(g)(1).  After successfully petitioning the California Department of Justice to amend his arrest record to accurately record the misdemeanor charges, Newton appealed that denial to the FBI.

26. On July 19, 2021, the FBI sent Newton a letter denying his appeal.  The FBI acknowledged that the original purported basis for denying Newton the firearm was resolved, but nevertheless denied Newton's challenge on new grounds:  Its records "reveal[ed] a potentially prohibitive arrest lacking victim relationship in association with" 18 U.S.C. §§ 921(a)(33) and

922(g)(9). In other words, the FBI's criminal records for the 1981 misdemeanors did not affirmatively show whether Newton was a spouse, parent, guardian, co-parent, or cohabitant – the relationships that would make either of the misdemeanors a "domestic violence" misdemeanor – of either of the two other participants in the 1981 fight. 18 U.S.C. § 921(a)(33)(A)(ii). The FBI then put the burden on Newton to prove that he was *not* a domestic violence misdemeanant if he wanted his purchase transaction to proceed:

> If you have, or can obtain, documentation that was available at the time of the arrest/court proceedings, please provide the court documentation containing the final disposition, level of conviction, and/or convicting statute and subsection; police report or court documentation containing victim information; documentation containing information that your firearm rights were restored, a pardon was received, or the case was expunged, etc. Please be advised, a "no record found" document is not sufficient documentation and should not be provided. This includes documentation that indicates the records are no longer available, or have been destroyed, due to state retention laws.

A true and correct copy of the FBI's denial letter is attached as Exhibit 1.

27. On October 5, 2021, Newton submitted a letter to the FBI explaining the circumstances of his 1981 arrest and misdemeanor convictions; provided declarations under penalty of perjury from himself and one of his nephews confirming the events of December 26, 1981; and supplied correspondence from the United States District Court for the Eastern District of California confirming that it had no records relating to Newton's arrest, stating that all records from the Yosemite court are destroyed after five years. A true and correct copy of the letter and supporting materials is attached as Exhibit 2.

28. On November 10, 2021, the FBI sent Newton a letter from the NICS Voluntary Appeal File restating that the bureau's records on Newton's contain "potentially prohibitive" information for a misdemeanor crime of domestic violence based on his arrest by the United States National Park Service on December 26, 1981. A true and correct copy the letter is attached as Exhibit 3.

29. In short, because Newton could not provide the underlying records of his 1981 court proceeding – because the federal government destroyed those records – he has been denied the right to purchase a firearm.

30. *Statutory Relief Under 18 U.S.C. § 925A*. Defendants' erroneous denial of Newton's right to purchase a firearm entitles him to statutory relief under 18 U.S.C. § 925A, which provides:

> Any person denied a firearm pursuant to subsection (s) or (t) of section 922—
>
> (1) due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act; or
>
> (2) who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922,
>
> may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be. In any action under this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.

31. Newton is entitled to relief under Section 925A because Defendants erroneously denied him a firearm based on their unsupported assertion that Newton could potentially be prohibited from receiving a firearm as a domestic violence misdemeanant pursuant to 18 U.S.C. § 922(g)(9). Newton is likewise entitled to relief under Section 925A to the extent Defendants' denial was based on erroneous information relating to him in NICS.

32. Newton is not a domestic violence misdemeanant. Neither of the two convictions stemming from the Boxing Day bar fight were misdemeanor crimes of domestic violence. Newton had never met the two people he tussled with before he walked into the bar that night. Thus, they were not Newton's current or former spouse, or his co-parent or cohabitant; Newton was not their parent or guardian; nor were they a person to whom Newton had a relationship "similarly situated" to that of a spouse, parent, or guardian. *See* 18 U.S.C. § 921(a)(33)(A)(ii).

33. *Second Amendment And Fifth Amendment Violations*. Defendants also violated Newton's Second Amendment rights by preventing Newton from possessing a firearm. At its core, the Second Amendment protects "the right of law-abiding, responsible citizens to use arms

in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). Defendants have eviscerated Newton's Second Amendment rights by barring him from possessing firearms because Newton could not establish—to their satisfaction—that he was not prohibited from possessing firearms.  Law-abiding, responsible citizens are entitled to keep and bear arms unless and until the government establishes that an individual is prohibited from exercising their Second Amendment rights.  By requiring instead that Newton demonstrate that he is not prohibited from possessing or receiving a firearm, Defendants inverted the constitutional framework and violated the Second Amendment.

34. Defendants' approach violates the core principle that when the government regulates conduct impinging on constitutional rights, it bears the burden of proving that its actions are justified.  "[T]he power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom." *Cantwell v. Connecticut*, 310 U.S. 296, 304 (1940).  So, when constitutional rights are at stake, due process requires that the government bear the burden of proof. *Speiser v. Randall*, 357 U.S. 513, 525–26 (1958).  In the analogous context of speech restrictions, "it has long been established that the government cannot limit speech protected by the First Amendment without bearing the burden of showing that its restriction is justified." *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986) (collecting cases).  *See also Smith v. California*, 361 U.S. 147, 150–51 (1939) (explaining that "the allocation of the burden of proof . . . cannot be applied in settings where they have the collateral effect of inhibiting the freedom of expression, by making the individual the more reluctant to use it.").

35. Put simply, it is the government's burden to establish that Newton is prohibited from exercising his Second Amendment rights, not the other way around.  The government's backwards approach violated both the Second Amendment and the Fifth Amendment.  And because the government has no evidence that Newton is barred by federal law from purchasing a firearm in any event, the Court should order that the transaction proceed.

36. On information and belief, Plaintiffs allege that the FBI and BATFE have a policy, practice, or custom of requiring individuals to demonstrate that they are not prohibited from possessing or receiving a firearm when the NICS background check reveals that there is "potentially prohibiting" information even though the FBI and BATFE do not possess information demonstrating that such individuals are not, in fact, prohibited from possessing or receiving a firearm. Plaintiff FPC further alleges on information and belief that the FBI and BATFE have enforced or applied this policy, practice, or custom to multiple FPC members nationwide who are similarly situated to Newton.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### VIOLATION OF 18 U.S.C. § 925A (ERRONEOUS DENIAL OF FIREARM)

### (As to Defendant United States of America)

37. Plaintiffs incorporate here by reference paragraphs 1 through 36, supra, as if fully set forth herein.

38. Defendants' denial of Newton's application to purchase a firearm was erroneous. As set forth above, Newton is not a domestic violence misdemeanant, so he is not barred by 18 U.S.C. § 922(g)(9) from acquiring a firearm.

39. Plaintiffs request that the Court issue an order declaring that Newton is not barred from receipt of a firearm pursuant to 18 U.S.C. § 922(g)(9) as a result of the 1981 misdemeanors and directing that the erroneous information in the background check system be corrected to reflect that he has not been convicted of a misdemeanor crime of domestic violence. Plaintiffs further request that Court issue an order directing that the firearm transfer be approved.

40. Plaintiffs also request that the Court issue an order directing Defendants to issue Plaintiff Newton a UPIN (Unique Personal Identification Number) so that Newton does not face the risk of an erroneous denial in future transactions.

## SECOND CAUSE OF ACTION

## VIOLATION OF SECOND AMENDMENT

### (As to Defendants Garland, Wray, and Richardson)

41. Plaintiffs incorporate here by reference paragraphs 1 through 40, supra, as if fully set forth herein.

42. Under the Second Amendment, it is the government's burden to establish that an individual is prohibited from exercising their individual right to keep and bear arms. By requiring instead that Newton demonstrate that he is not prohibited from possessing a firearm, Defendants inverted the constitutional framework, which has prevented Newton from being considered eligible to purchase a firearm. This was unconstitutional.

43. On information and belief, Defendants have applied or enforced the same policy, practice, or custom to other individuals who are similarly situated to Plaintiff Newton, including members of Plaintiff Firearms Policy Coalition.

44. As a direct and proximate result of Defendants' violation of the Second Amendment, Plaintiff Newton has suffered irreparable harm, including the loss of his constitutional rights, entitling him to declaratory and injunctive relief.

## THIRD CAUSE OF ACTION

## VIOLATION OF FIFTH AMENDMENT

### (As to Defendants Garland, Wray, and Richardson)

45. Plaintiffs incorporate here by reference paragraphs 1 through 44, supra, as if fully set forth herein.

46. The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving individuals of "life, liberty, or property, without the due process of law."

47. Defendants violated Newton's procedural due process rights by requiring him to demonstrate that he is not prohibited from possessing a firearm. The Fifth Amendment requires instead that the government bear the burden of proving that such a deprivation of liberty (and property) is justified.

48. On information and belief, Defendants have applied or enforced the same policy, practice, or custom to other individuals who are similarly situated to Plaintiff Newton, including members of Plaintiff Firearms Policy Coalition.

49. As a direct and proximate result of Defendants' violation of the Fifth Amendment, Plaintiff has suffered irreparable harm, including the loss of his constitutional rights, entitling him to declaratory and injunctive relief.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, as follows:

1. An order declaring under 18 U.S.C. § 925A that Newton was and is not prohibited from receipt of a firearm pursuant to 18 U.S.C. § 922(g) or (n) as a result of the 1981 misdemeanors.

2. An order requiring Defendants to allow the transfer to Newton of the firearm at issue in the wrongful denial.

3. An order requiring Defendants to issue Plaintiff Newton a UPIN.

4. A declaratory judgment stating that Defendants Garland, Wray, and Richardson, in their official capacities, have violated the Second Amendment to the United States Constitution.

5. A declaratory judgment stating that Defendants Garland, Wray, and Richardson, in their official capacities, have violated the Fifth Amendment to the United States Constitution.

6. An order preliminarily and permanently restraining and enjoining Defendants from enforcing a policy that requires Plaintiff Newton and others hoping to acquire firearms to bear the burden of proving that they are not prohibited from exercising their Second Amendment right to keep and bear arms as a condition of acquiring firearms or ammunition.

7. All other and further legal and equitable relief, including injunctive relief, against Defendants as necessary to effectuate the Court's judgment, and/or as the Court otherwise deems just and equitable.

8. Attorneys' fees under 18 U.S.C § 925A and any other applicable law.

Dated: January 27, 2022            LYNCH MURPHY MCLANE LLP


By /s/ Shannon McCabe
SHANNON MCCABE, OSB No. 143812
smccabe@lynchmurphy.com
MICHAEL R. MCLANE, OSB No. 904435
mmclane@lynchmurphy.com

Attorneys for Plaintiffs
RALPH MARK NEWTON and FIREARMS POLICY COALITION, INC.