BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| RALPH MARK NEWTON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Case No. 1:22-cv-00150-CL<br><br>**DEFENDANTS' MOTION TO DISMISS** |

Defendants' Motion to Dismiss

## DEFENDANTS' MOTION TO DISMISS

Defendants respectfully move to dismiss Plaintiffs' Complaint for Declaratory, Injunctive, and Other Relief, ECF No. 1, under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The grounds for this motion are set forth in the accompanying Memorandum of Law in Support of Defendants' Motion to Dismiss. Pursuant to Local Rule of Civil Procedure 7-1(a), undersigned counsel hereby certifies that he conferred in good faith with Plaintiffs' counsel by telephone, but the parties were unable to resolve the issues raised by this motion.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| RALPH MARK NEWTON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants. | Case No. 1:22-cv-00150-CL <br><br><br> **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS

INTRODUCTION.............................................................................................................................1

BACKGROUND ...........................................................................................................................3

I.     Statutory and Regulatory Background .....................................................................3

II.    Factual Background .....................................................................................................6

III.   This Litigation ...........................................................................................................8

IV.   Recent Developments ...............................................................................................9

LEGAL STANDARDS................................................................................................................11

I.     Rule 12(b)(1): Lack of subject-matter jurisdiction .............................................11

II.    Rule 12(b)(6): Failure to state a claim upon which relief can be granted......................12

ARGUMENT...............................................................................................................................12

I.     Plaintiffs lack Article III standing. ........................................................................12

II.    Newton lacks statutory standing to seek relief under 18 U.S.C. § 925A. ...................18

III.   Plaintiffs' Second and Fifth Amendment claims challenging Defendants' alleged "policy" fail to state a claim upon which this Court can grant relief.............................19

CONCLUSION ............................................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Al Otro Lado, Inc. v. Nielsen*,
  327 F. Supp. 3d 1284 (S.D. Cal. 2018)..............................................................................21

*Alexander v. FBI*,
  Civ. A. No. 4:18-cv-01549 2020 WL 999802 (E.D. Mo. March 2, 2020)..........................22

*Ahlman v. Barnes*,
  20 F.4th 489, 493 (9th Cir. 2021) ....................................................................................19

*Alsaidi v. U.S. Dep't of State*,
  292 F. Supp. 3d. 320 (D.D.C. 2018).................................................................................20

*Arista Record LLC v. Doe*,
  604 F.3d 110 (2d Cir. 2010) ............................................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................12, 20, 22

*Associated General Contractors of Am., Inc., San Diego Chapter, Inc. v. Cal.*
  *Dep't of Transp.*,
  713 F.3d 1187 (9th Cir. 2013)...........................................................................................17

*Bank of Am. Corp. v. City of Miami*,
  137 S. Ct. 1296 (2017)................................................................................................18, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................................12, 20

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)......................................................................................................14, 17

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)....................................................................................................13, 14

*Clark v. Lynch*,
  213 F. Supp. 3d 1347 (D. Kan. 2016) ...............................................................................15

*Coal. of Clergy, Laws., & Professors v. Bush*,
  310 F.3d 1153 (9th Cir. 2002) .........................................................................................13

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) ........................................................................................................19

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) .................................................................................................13

*Daniels-Hall v. Nat'l Educ. Ass'n,*
    629 F.3d 992 (9th Cir. 2010) ..........................................................................12, 15

*Davis v. Fed. Election Comm'n,*
    554 U.S. 724 (2008) .................................................................................................16

*Draper v. Healey,*
    827 F.3d 1 (1st Cir. 2016) .......................................................................................17

*East Bay Sanctuary Covenant v. Trump,(East Bay),*
    932 F.3d 742 (9th Cir. 2018) ..................................................................................18

*Friends of Earth Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) .................................................................................................16

*Godecke v. Kinetic Concepts, Inc.,*
    937 F.3d 1201 (9th Cir. 2019) ..........................................................................12, 16

*Gonzalez v. U.S. Immigration and Customs Enforcement,*
    975 F.3d 788, (9th Cir. 2020) ..................................................................................16

*Graden v. Conexant Systs. Inc.,*
    496 F.3d 291 (3d Cir. 2007) ....................................................................................19

*Gunn v. Minton,*
    568 U.S. 251 (2013) .................................................................................................11

*Haase v. Sessions,*
    835 F.2d 902 (D.C. Cir. 1987) ................................................................................20

*Head v. Wilkie,*
    936 F.3d 1007 (9th Cir. 2019) ................................................................................18

*Hindes v. FDIC,*
    137 F.3d 148 (3d Cir. 1998) ......................................................................................9

*Huddleston v. United States,*
    415 U.S. 814 (1974) ...................................................................................................3

*Hunt v. Wash. State Apple Advertising Comm'n,*
    432 U.S. 333, 342 (1977) ...................................................................................13, 14

*In re Gilead Sciences Securities Litig.,*
    536 F.3d 1049 (9th Cir. 2008) .................................................................................12

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and*
    *Products Liability Litigation,*
    975 F.3d 770 (9th Cir. 2020)..............................................................................13

*Jachetta v. United States,*
    653 F.3d 898 (9th Cir. 2011)...............................................................................9

*Johnson v. Shasta Corp.,*
    2022 WL 789018 (N.D. Cal. Feb. 24, 2022)..............................................12, 16

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994)...........................................................................................11

*Land v. Dollar,*
    330 U.S. 731 (1947)...........................................................................................12

*Leite v. Crane Co.,*
    749 F.3d 1117 (9th Cir. 2014)...........................................................................11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014).....................................................................................18, 19

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)...........................................................................................14

*Mayfield v. United States,*
    599 F.3d 964 (9th Cir. 2010)............................................................................16

*McCarthy v. United States,*
    850 F.2d 558 (9th Cir. 1988)............................................................................12

*Menzel v. Scholastic, Inc.,*
    2018 WL 1400386 (N.D. Cal. March 19, 2018)..............................................21

*Nat'l Sec. Counselors v. CIA,*
    931 F. Supp. 2d 77 (D.D.C. 2013)...................................................................20

*Or. Advocacy Ctr. v. Mink,*
    322 F.3d 1101 (9th Cir. 2003)..........................................................................17

*People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.,*
    60 F. Supp. 3d 14 (D.D.C. 2014), ...................................................................20

*Pistor v. Garcia,*
    791 F.3d 1104 (9th Cir. 2015)..........................................................................11

*Poulsen v. U.S. Dep't of,Def.,*
    994 F.3d 1046 (9th Cir. 2021)..........................................................................19

*Reed Elsevier, Inc. v. Muchnick,*
    559 U.S. 154 (2010) ..................................................................................................11

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ................................................................................11

*Scocca v. Smith,*
    2012 WL 2375203 (N.D. Cal. June 22, 2012) ........................................................18

*Scott v. Pasadena Unified Sch. Dist.,*
    306 F.3d 646 (9th Cir. 2002) ..................................................................................17

*Shwarz v. United States,*
    234 F.3d 428 (9th Cir. 2000) ..................................................................................12

*Sierra Club v. Trump,*
    929 F.3d 670 (9th Cir. 2019) ..................................................................................18

*Smith v. United Airlines, Inc.,*
    673 F. App'x 720 (9th Cir. 2016) ............................................................................21

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ...........................................................................................13, 14

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) .............................................................................12, 16

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ..................................................................................................13

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ...........................................................................................15, 17

*Telesaurus VPC, LLC v. Power,*
    623 F.3d 998 (9th Cir. 2010) ..................................................................................20

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ............................................................................................12

*United Food and Com. Workers Union Local 751 v. Brown Grp., Inc.,*
    517 U.S. 544 (1996) ................................................................................................17

*Villa v. Maricopa Cnty.,*
    865 F.3d 1224 (9th Cir. 2017) ................................................................................14

*West v. Atkins,*
   487 U.S. 42 (1988) ..................................................................................................9

*Wojciechowski v. Kohlberg Ventures, LLC,*
   923 F.3d 685 (9th Cir. 2019) .................................................................................6

**Statutes**

18 U.S.C. § 113 ..............................................................................................................6

18 U.S.C. § 921 .....................................................................................................6, 7, 10

18 U.S.C. § 922 .....................................................................................................*passim*

18 U.S.C. § 923 ..............................................................................................................3

18 U.S.C. § 924 ..............................................................................................................3

18 U.S.C. § 925 ..............................................................................................................3

18 U.S.C. § 925A ...................................................................................................*passim*

18 U.S.C. § 926 ..............................................................................................................3

18 U.S.C. § 927 ..............................................................................................................3

18 U.S.C. § 928 ..............................................................................................................3

18 U.S.C. § 929 ..............................................................................................................3

18 U.S.C. § 930 ..............................................................................................................3

18 U.S.C. § 931 ..............................................................................................................3

42 U.S.C. § 1983 ............................................................................................................9

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(1) ..................................................2,11, 22

Federal Rule of Civil Procedure 12(b)(6) ...............................................2, 11, 18, 22

**Regulations**

27 C.F.R. § 478.124 .......................................................................................................4

28 C.F.R. § 25.1 .............................................................................................................4

28 C.F.R. § 25.2 ....................................................................................................*passim*

28 C.F.R. § 25.3 ...................................................................................................................4

28 C.F.R. § 25.4 ...................................................................................................................4

28 C.F.R. § 25.5 ...................................................................................................................4

28 C.F.R. § 25.6 ..........................................................................................................*passim*

28 C.F.R. § 25.7 ...................................................................................................................4

28 C.F.R. § 25.8 ...................................................................................................................4

28 C.F.R. § 25.9 ...................................................................................................................4

28 C.F.R. § 25.10 ............................................................................................................5, 7

28 C.F.R. § 25.11 ................................................................................................................4

36 C.F.R. § 2.34 .................................................................................................................6

## Other Authorities

Brady Handgun Violence Prevention Act ("Brady Act"),
    Pub. L. No. 103-159 107 Stat. 1536 (1993) ...............................................................3

Federal Bureau of Investigation, *Firearm-Related Challenge (Appeal) and Voluntary Appeal File (VAF)*
    (last visited April 25, 2022), https://www.fbi.gov/services/cjis/nics/national-instant-
    criminal-background-check-system-nics-appeals-vaf ................................................6

H.R. Rep. No. 103-104 (1993) as reprinted in U.S.C.C.A.N. 1984–88.........................3

S. Rep. No. 1501 (1968) ....................................................................................................3

**INTRODUCTION**

Several years ago, Plaintiff Ralph Mark Newton attempted to purchase a handgun from an Oregon gun shop. According to Newton, the Federal Bureau of Investigation denied the purchase because the State of California incorrectly listed a conviction in his criminal record as a felony. Persons convicted of a felony are generally prohibited from possessing firearms under federal law. The State of California eventually corrected the error, and Newton appealed the denial of his purchase to the FBI. The FBI notified Newton in July 2021 that it had resolved the denial in his favor in light of his amended criminal record.

In addition to the erroneously recorded felony conviction, the FBI's National Instant Criminal Background Check System ("NICS") revealed offenses in Newton's criminal record that potentially constitute "misdemeanor crimes of domestic violence." Like felons, persons convicted of domestic-violence crimes are prohibited from possessing firearms under federal law. 18 U.S.C. § 922(g)(9). Before it could determine whether Newton had been convicted of prohibitive domestic-violence crimes, however, the FBI needed to obtain information regarding the identities of the victims of the underlying offenses. The FBI thus informed Newton that it was placing his handgun transaction in a "delayed" status to permit further investigation.

When the NICS uncovers information about a prospective purchaser that requires more research to determine whether he or she is prohibited from possessing a firearm, regulations governing the NICS require that the FBI place the transaction in a "delayed" status until the FBI has sufficient information to make a final determination. 28 C.F.R. §§ 25.2, 25.6(c)(1)(iv)(B). But by placing a transaction in a "delayed" status, the FBI does *not* prevent the federally licensed dealer from transferring the firearm to the prospective purchaser; it merely requires the dealer to wait until either the FBI approves the transaction *or* three business days have elapsed since the FBI delayed the transaction. *Id.* In other words, a prospective purchaser is still able to acquire a firearm from a federally licensed dealer even though the FBI has "delayed" his or her transaction.

But after his handgun transaction was placed in a "delayed" status, Newton did not return to the Oregon gun shop to purchase the handgun (as he was permitted to do). Instead, he filed this lawsuit, alleging that the FBI was erroneously *denying* him a firearm under 18 U.S.C. § 925A. *See* Compl. for Declaratory, Injunctive, or Other Relief, ECF No. 1 ("Compl."). Newton, along with Plaintiff Firearms Policy Coalition ("Coalition"), also alleges that the FBI and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") have enforced an unconstitutional "policy, practice, or custom" against him and other Coalition members that *prevents* them from acquiring firearms based on potentially prohibitive information revealed in their NICS background checks, unless they can prove that they are not in fact prohibited from firearm possession.

The Court should dismiss these claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for at least three reasons:

*First,* Plaintiffs lack Article III standing. To establish standing at the pleading stage, a plaintiff must allege *well-pleaded* facts showing that he has suffered an actual, concrete injury caused by the defendant's challenged conduct. Here, Newton alleges that the FBI *denied* his handgun transaction based on potentially prohibitive information in his criminal record, thus *preventing* him from acquiring a firearm. But that allegation is both factually and legally incorrect: Plaintiffs' own evidence shows that the FBI placed Newton's handgun transaction in a "delayed" status, which does not prohibit him from acquiring a firearm. *See* 28 C.F.R. §§ 25.2, 25.6(c)(1)(iv)(B). And because the Coalition fails to identify a member with standing in his or her own right, it does not possess associational standing to assert any claims on behalf of its members. For these reasons alone, this case should be dismissed for lack of subject-matter jurisdiction.

*Second,* Newton lacks statutory standing to bring a claim under 18 U.S.C. § 925A. Section 925A creates a cause of action for a person that is erroneously "denied a firearm" under federal law to seek a court order directing that the firearm be transferred. But Newton has not been *denied* a firearm. Rather, his handgun transaction was placed in a "delayed" status, which does not prevent him from purchasing the handgun. *See* 28 C.F.R. §§ 25.2, 25.6(c)(1)(iv)(B).

*Third,* Plaintiffs' Second and Fifth Amendment challenges to Defendants' alleged "policy, practice, or custom" do not state a claim for relief. The gravamen of these claims is that Defendants are enforcing a "policy" that requires prospective purchasers, "as a condition of acquiring firearms," to prove that they are not prohibited from possessing a firearm when their NICS background checks reveal potentially prohibitive information. Compl., Prayer for Relief ¶ 6. But Plaintiffs' complaint alleges no *facts* suggesting that this "policy" even exists, and Plaintiffs' conclusory allegations and "information and belief" are not enough to raise a plausible inference that it does.

## BACKGROUND

### I.    Statutory and Regulatory Background

The Gun Control Act of 1968, as amended, 18 U.S.C. §§ 921–931, created a comprehensive federal regulatory scheme governing the manufacture and distribution of firearms and ammunition. Congress's "principal purpose" in passing this legislation was to "curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" *Huddleston v. United States*, 415 U.S. 814, 824 (1974) (quoting S. Rep. No. 1501 at 22 (1968)). The Gun Control Act thus prohibits, among other things, certain categories of persons from receiving and possessing firearms and ammunition in or affecting interstate or foreign commerce. 18 U.S.C. § 922(g)(1)–(9). Among those prohibited categories are certain felons, the mentally defective, non-citizens in the country unlawfully, and persons convicted of domestic-violence crimes. *Id.*

In 1993, Congress enacted the Brady Handgun Violence Prevention Act ("Brady Act"), Pub. L. No. 103-159, 107 Stat. 1536, to amend the Gun Control Act. Seeking to prevent the transfer of firearms to those prohibited from possessing them, H.R. Rep. No. 103-344 (1993), as reprinted in 1993 U.S.C.C.A.N. 1984, 1984–88, the Brady Act required individuals attempting to purchase a firearm from a federally licensed dealer or manufacturer (hereinafter "federal firearms licensee" or "FFL") to undergo a criminal background check, 18 U.S.C. § 922(t). To facilitate compliance with this requirement, the Brady Act directed the Attorney General to establish and operate a nationwide criminal background check system that FFLs would be required to consult to determine whether a

prospective purchaser is prohibited from possessing a firearm under federal or state law. 18 U.S.C. § 922(t)(1), (t)(2). Soon after the Brady Act's passage, the Attorney General established the National Instant Criminal Background Check System, or the "NICS", 28 C.F.R. §§ 25.1–25.11, and assigned management of the NICS to the FBI, *id.* § 25.3.

Under the Attorney General's regulations governing the NICS, the transfer of a firearm from an FFL generally proceeds in three phases. *First*, an FFL collects the prospective purchaser's name and certain other identifying information (*e.g.*, sex, date of birth, residence address) and submits it to the NICS. 27 C.F.R. § 478.124(c)(1), (2); 28 C.F.R. § 25.7(a). An examiner with the NICS Operation Center then uses this information to perform a background check to determine, based on the information available to the NICS, whether the prospective purchaser is prohibited from possessing a firearm under federal or state law. *See* 18 U.S.C. § 922(t)(2); 28 C.F.R. § 25.1. The background check involves a search of three national databases: (i) the National Crime Identification Center ("NCIC"), which contains records on wanted persons, protection orders, and other persons identified as relevant to NICS searches; (ii) the Interstate Identification Index ("III"), which contains criminal-history records; and (iii) the NICS Index, which contains information on prohibited persons, as defined under either federal or state law. *See* 28 C.F.R. § 25.6(c)(1)(iii), (f).

After performing a background check, the NICS sends the FFL one of three responses:

- <u>Proceed.</u> If the background check reveals no prohibitive or potentially prohibitive information regarding the prospective purchaser, the NICS will send a "proceed" response, in which case the FFL may transfer the firearm, unless applicable state law requires that the transaction be delayed. 28 C.F.R. § 25.6(c)(1)(iv)(A).

- <u>Denied.</u> If the background check unveils information demonstrating that either state or federal law prohibits the prospective purchaser from receiving a firearm, the NICS will send a "denied" response, thus barring the FFL from transferring the firearm. *Id.* § 25.6(c)(1)(iv)(C).

- <u>Delayed.</u> If the background check finds a "potentially prohibitive" record requiring more research to determine whether the prospective purchaser is, in fact, prohibited from possessing a firearm, the NICS will send a "delayed" response. *Id.* §§ 25.2, 25.6(c)(1)(iv)(B). An FFL that receives a "delayed" response from the NICS may complete the transfer once (i) the NICS sends a follow-up "proceed" response, or (ii) three business days have elapsed since the FFL received the "delayed" response— whichever occurs first. *Id.* The FFL also must comply with any minimum waiting period required under state law.

A prospective purchaser whose firearm transaction is "denied" by the NICS may pursue several administrative remedies. He or she may (i) apply to the FBI (or a point-of-contact state or local agency ("POC"), *see id.* § 25.2) to request the reasons for the denial, *id.* § 25.10(a), (b); (ii) appeal to the FBI or a POC to challenge the accuracy of the record upon which the denial was based, *id.* § 25.10(c), (d); and/or (iii) appeal to the FBI or a POC to attempt to demonstrate that his or her rights to possess a firearm have been restored, *id.* § 25.10(c).[1] An individual whose transaction has been "denied" or "delayed" or who has not yet attempted to purchase a firearm may also submit an application to the FBI to allow it to maintain information about the individual—*e.g.*, information that nullifies prohibitive or potentially prohibitive information in the individual's criminal record—in a "Voluntary Appeal File" ("VAF") for the purpose of preventing future erroneous denials or extended delays of firearm transactions. *Id.* § 25.10(g). If the FBI approves an individual's VAF application, he or she will receive a "unique personal identification number" ("UPIN") to use in future transactions requiring a NICS background check.[2]

---

[1] If a prospective purchaser's "appeal is successful and more than [30] days have transpired since the initial" NICS background check, "the FFL must recheck the NICS before" transferring the firearm. 28 C.F.R. § 25.10(e).

[2] *See* Federal Bureau of Investigation, *Firearm-Related Challenge (Appeal) and Voluntary Appeal File (VAF)* (last visited April 25, 2022), https://www.fbi.gov/services/cjis/nics/national-instant-criminal-background-check-system-nics-appeals-vaf.

The Gun Control Act also provides a narrow cause of action for prospective purchasers who have had a firearm transaction denied. Under 18 U.S.C. § 925A, "any person denied a firearm pursuant to subsection (s) or (t) of section 922" who is not, in fact, prohibited from possessing a firearm, or whose denial was based on "the provision of erroneous information" by NICS or a POC, may bring an action against the United States or a POC "for an order directing that the erroneous information be corrected or that the transfer be approved."

## II.    Factual Background[3]

In 1981, Newton visited Yosemite National Park with two of his nephews. Compl., ¶¶ 2, 20. While there, the United States Park Police arrested Newton for getting into a bar fight with two individuals. *Id.* He was promptly charged and convicted of two federal misdemeanor offenses for disorderly conduct and assault. *Id.* (citing 36 C.F.R. § 2.34(a)(1); 18 U.S.C. § 113(a)(4)); *see also id.*, Ex. 2 at 12–14.

In 2019, Newton attempted to purchase a handgun from Fox Firearms, a federally licensed firearm dealer operating in Grants Pass, Oregon. Compl. ¶ 25; Aff. of Brian Allen Barker ¶ 4, Ex. 1 ("Barker Aff."). Although the complaint does not specifically allege that Fox Firearms initiated a NICS background check for this transaction, as an FFL, it was obligated to do so before selling Newton the handgun. *See* 18 U.S.C. § 922(t)(1). A NICS background check would have revealed Newton's 1981 conviction for disorderly conduct, which the State of California listed incorrectly as a felony offense in Newton's criminal record. Compl. ¶ 25; *see also id.*, Ex. 2 at 22–23. Because 18 U.S.C. § 921(g)(1) prohibits persons convicted of a felony of this nature from possessing a firearm, Newton's handgun transaction was "initially denied." *Id.* ¶ 25.[4]

---

[3] This section includes factual allegations from Plaintiffs' complaint, stating them as though they are true and construing them in a light most favorable to Plaintiffs. *See Wojciechowski v. Kohlberg Ventures, LLC,* 923 F.3d 685, 688 n.2 (9th Cir. 2019). By reciting these allegations, however, Defendants are not conceding that they are objectively true.

[4] An exhibit to the complaint refers to correspondence between the FBI and Newton in December 2019. Compl., Ex. 2 at 1. Plaintiffs' complaint does not attach a copy of this correspondence or otherwise mention it in their pleadings.

The following year, Newton petitioned the State of California to amend his criminal record. *Id.* ¶ 25, Ex. 2 at 22–23. The state notified Newton in August 2020 that his criminal record had been amended to reflect that his 1981 disorderly conduct conviction was for a misdemeanor offense, not a felony. *Id.* With his criminal record corrected, Newton administratively appealed the denial of his handgun transaction to the FBI and submitted a VAF application. *Id.* ¶ 25, Ex. 1 at 2; *see also* 28 C.F.R. § 25.10(d), (g).

In July 2021, the FBI wrote a letter to Newton, informing him that the basis for the prior denial—*i.e.*, the felony conviction originally listed in his state-maintained criminal record—had been "resolved" in his favor. Compl., Ex. 1 at 1; *see also id.* ¶ 26. But although his handgun transaction was no longer "denied," *see* 28 C.F.R. § 25.6(c)(1)(iv)(C), the FBI informed Newton that the records resulting from his 1981 arrest for disorderly conduct and assault were "potentially prohibitive" under a different statutory provision: 18 U.S.C. § 922(g)(9). Compl., Ex. 1 at 1. Section 922(g)(9) prohibits a person convicted of a misdemeanor crime of domestic violence from possessing a firearm. A "misdemeanor crime of domestic violence" is statutorily defined to include offenses involving "the use or attempted use of physical force . . . by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." *Id.* § 921(a)(33)(A). After further review and investigation of Newton's criminal history, the FBI was still unable to determine the identities of the victims of the 1981 bar fight in Yosemite National Park. Compl., Ex. 1 at 1; *see also id.* ¶ 26. It thus was unable to confirm whether Newton's offenses were misdemeanor crimes of domestic violence. *See* Compl., Ex. 1 at 1–2. The FBI invited Newton to submit any documentation (*e.g.*, court or arrest records) indicating the victims' identities. *Id.* But at that time, the FBI was precluded from directing Fox Firearms to "proceed" with Newton's handgun transaction. 28 C.F.R. § 25.6(c)(1)(iv)(A); *see also id.* § 25.2. Instead, the FBI informed Newton that the transaction would (as required under 28 C.F.R. § 25.6(c)(1)(iv)(B)) "remain in *delay* status" until the agency obtained definitive information on which to conclude whether the records resulting from his 1981 arrest were in fact prohibitive under § 922(g)(9). Compl., Ex. 1 at

2 (emphasis added); *see also* 28 C.F.R. §§ 25.2, 25.6(c)(1)(iv)(B) (explaining that, for transactions receiving a "delayed" response (*i.e.*, a transaction in "open" status), "the NICS continues researching potentially prohibiting records regarding the transferee and, if definitive information is obtained, communicates to the FFL the final determination that the check resulted in a proceed or a deny").

Newton responded to the FBI's letter several months later. Compl., Ex. 2. Newton's letter states (albeit inaccurately) that the FBI had declared Newton to be "ineligible to own or purchase a firearm" and "erroneously denied [him] the right to purchase, own, or possess firearms." *Id.*, Ex. 2 at 1, 3.[5] The letter requested that the FBI "revise" that determination because, it alleged, Newton's 1981 convictions for disorderly conduct and assault could not have been for crimes of domestic violence. Ex. 2 at 1–3. The letter attached a declaration purportedly signed by Newton attesting that he had no relationship with the victims of the underlying offenses. *Id.*, Ex. 2 at 17. It also explained that any records pertaining to his convictions would have long been destroyed by the district court. *Id.*, Ex. 2 at 3, 20–21.

In November 2021, the FBI notified Newton, again by letter, that his VAF application had been rejected. *Id.*, Ex. 3. The letter informed him that he could not be entered into the VAF because of the potentially prohibitive information contained in his criminal record. *Id.*

## III.    This Litigation

Newton and the Coalition commenced this action on January 27, 2022. Plaintiffs allege that the FBI "erroneously denied" Newton's prospective firearm transaction when it determined that his 1981 convictions were potentially prohibitive under 18 U.S.C. § 922(g)(9), thus entitling Newton to relief under 18 U.S.C. § 925A. *Id.* ¶¶ 29–31; *accord id.* ¶¶ 1, 3–4, 7, 19, 38–40. In particular, Plaintiffs seek an order pursuant to § 925A (i) declaring that Newton's 1981 convictions do not prohibit him

---

[5] Newton's letter also states that the initial denial of his firearm transaction was "spurious and without basis" because his state-maintained criminal record "does not contain any entries for a felony offense." Ex. 2 at 1. That accusation cannot be taken seriously: Newton himself admits that his criminal record *did* contain an entry for a felony conviction at the time his transaction was denied. Compl. ¶ 25.

from possessing a firearm under 18 U.S.C. § 922; (ii) requiring Defendants "to allow" Fox Firearms to transfer Newton the handgun he sought to purchase in 2019; and (iii) requiring Defendants to issue Newton a UPIN. *Id.*, Prayer for Relief ¶¶ 1–3. Plaintiffs also allege, "based on information and belief," that Defendants (the FBI and ATF) have enforced against Newton and other Coalition members a "policy, practice, or custom" requiring prospective firearm purchasers, "as a condition of acquiring firearms or ammunition," to prove that they are not prohibited under federal law from possessing a firearm when their NICS background check reveals potentially prohibitive information. *Id.* ¶¶ 36, Prayer for Relief ¶ 6. Plaintiffs claim that this alleged "policy" violates both the Second and Fifth Amendments of the United States Constitution. *Id.* ¶¶ 33–36, 42–49, Prayer for Relief ¶¶ 4–6.[6]

## IV.    Recent Developments

On February 23, 2022, the FBI conducted an audit of the three national databases utilized by the NICS to determine whether Newton was, at that time, prohibited from possessing a firearm under federal or state law. Barker Affidavit ¶ 6. As in prior NICS background checks, the FBI's audit revealed the records resulting from Newton's 1981 arrest for disorderly conduct and assault. *Id.* Given the nature of these offenses, the NICS's procedures required the FBI to conduct additional research to determine whether the underlying offenses involved both the physical-force and qualifying-relationship elements of a "misdemeanor crime of domestic violence," as defined under 18 U.S.C. § 921(a)(33). *Id.* ¶ 7. Accordingly, the FBI contacted the Yosemite National Park Police and the United States District Court for the Eastern District of California to try to obtain additional information regarding Newton's arrest following the 1981 bar fight, including his relationship to the victims. *Id.* ¶ 8. The FBI has not yet received a response from either entity; therefore, based on the information

---

[6] Plaintiffs' complaint suggests that 42 U.S.C. § 1983 is a basis for this Court's jurisdiction to decide their constitutional claims. Compl., ¶ 8. But § 1983 provides a cause of action against persons acting under color of *state* law. *West v. Atkins*, 487 U.S. 42, 48 (1988). It has no application to the United States, federal agencies, or their officers acting under color of *federal* law. *See, e.g., Hindes v. FDIC*, 137 F.3d 148, 158–59 (3d Cir. 1998); *Jachetta v. United States*, 653 F.3d 898, 908 (9th Cir. 2011) (rejecting the argument that § 1983 waives a federal agency's sovereign immunity).

available to the NICS, the FBI has been unable to resolve whether Newton's 1981 offenses are prohibitive under 18 U.S.C. § 922(g)(9). *Id.*

In situations like these, where the FBI is unable to determine whether a prospective purchaser's conviction is prohibitive under 18 U.S.C. § 922(g)(9) because it has not obtained documentation (*e.g.*, court or arrest records) regarding the identities of any victims of the underlying offense, the NICS's standard operating procedures permit the FBI to accept from the prospective purchaser a sworn, notarized statement explaining his or her relationship to the victim for the purpose of reaching a final determination whether the conviction is prohibitive. *Id.* ¶ 9. Thus, on March 14, 2022, in the interest of resolving whether Newton's 1981 offenses are prohibitive under § 18 U.S.C. § 922(g)(9), the FBI invited Newton to submit a new VAF application with a notarized, sworn statement describing the circumstances of his 1981 arrest, including an explanation of his relationship to the victims of the underlying offenses.[7] *Id.* ¶ 10, Ex. A. The FBI informed Newton that, if he submitted a VAF application meeting this criteria, the application would be eligible for expedited processing and, assuming his statement provided information that nullified the possibility that his 1981 offenses were domestic-violence crimes, the FBI would issue Newton a UPIN and would retain the statement in the VAF. *Id.* The FBI explained to Newton that obtaining a UPIN through this process would enable the NICS to promptly clear his 1981 offenses for any future firearm transaction requiring a NICS background check; but otherwise, absent a change in his criminal record (*e.g.*, expungement of his 1981 convictions), Newton would receive a "delayed" response from the NICS for any future transaction based on those potentially prohibitive convictions. *Id.*

On March 28, 2022, Newton informed the FBI that he would not be submitting a new VAF application with a notarized, sworn statement describing his relationship to the victims of his 1981 offenses. *Id.* ¶ 10.

---

[7] As explained above, Newton's October 5, 2021 letter to the FBI attached a declaration purportedly signed by Newton attesting that he had no relationship with the victims of the underlying offenses. Compl., Ex. 2 at 17–18. The declaration was not notarized, however.

## LEGAL STANDARDS

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which this Court can grant relief.

## I.    Rule 12(b)(1): Lack of subject-matter jurisdiction

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). As such, a court must presume that an action "lies outside [its] limited jurisdiction, and the burden of establishing the contrary rests upon" the party invoking federal jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). A court's subject matter jurisdiction refers to its "statutory or constitutional power to adjudicate the case" before it. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (citation omitted). When a court "lacks subject-matter jurisdiction, the court must dismiss the complaint" under Rule 12(b)(1). *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (citation omitted).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction must be granted when the allegations contained in the complaint fail to establish jurisdiction either "facially" or "factually." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "A 'facial' attack" under Rule 12(b)(1) "accepts the truth of the plaintiff's [well-pleaded] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings," *id.*, and the court may review the extrinsic evidence without converting the motion into one for summary judgment, *see McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."); *accord Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947).

## II.     Rule 12(b)(6):  Failure to state a claim upon which relief can be granted

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs' complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). This requires a plaintiff to provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, a court must accept as true all *well-pleaded* facts in the complaint. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). A court need not, however, accept the truth of "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Nor does it need "to accept as true a legal conclusion couched as a factual allegation." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1205 (9th Cir. 2019). And, important for purposes of this motion, a court is not "required to accept as true allegations that contradict exhibits attached to the [c]omplaint." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *accord Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Johnson v. Shasta Corp.*, 2022 WL 789018, at *3 (N.D. Cal. Feb. 24, 2022) ("[A]n allegation is not 'well-pleaded' if it is contradicted by other evidence put forth by the plaintiff.").

## <u>ARGUMENT</u>

## I.     Plaintiffs lack Article III standing.

This case should be dismissed because Plaintiffs have not established Article III standing. Article III limits federal courts' jurisdiction to resolving actual "Cases" and "Controversies," not any dispute that happens to arise between two parties. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). For there to be a case or controversy, a plaintiff must have standing to sue. *Id.* If standing is absent, a court cannot proceed at all to the merits of the dispute. *Coal. of Clergy, Laws., & Professors v.*

*Bush*, 310 F.3d 1153, 1164 (9th Cir. 2002) ("[W]here litigants lack standing," any further ruling on the merits "is, by very definition, for a court to act ultra vires." (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998))); *see also In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 975 F.3d 770, 776 n.4 (9th Cir. 2020) ("[C]ourts can't assume Article III jurisdiction to reach the merits of a case.").

In order to establish standing, a plaintiff must have (i) suffered an injury in-fact (ii) that is fairly traceable to the defendant's challenged conduct (iii) that a favorable ruling would redress. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the pleading stage, a plaintiff "must clearly allege facts demonstrating each element," *id.*, and it must do so "for each claim it seeks to press" and "for each form of relief sought," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted). And where, as here, reaching the merits of a dispute would force a court to decide whether the Executive Branch violated the Constitution, the court must employ an "especially rigorous" standing inquiry. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citation omitted).

To try to satisfy these requirements, Plaintiffs appear to rely on two different theories of standing. On the one hand, Newton claims to have standing in his own right, alleging that the FBI has prevented him from purchasing and possessing a firearm. The Coalition, on the other hand, does not claim to have been injured by Defendants; rather, it asserts standing to sue on behalf of its members who, Plaintiffs allege, have been denied the ability to acquire firearms as a result of Defendants' alleged policies and practices. *See Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 342 (1977) ("Even in the absence of injury to itself, an association may," under certain circumstances, "have standing solely as the representative of its members.").

Plaintiffs cannot establish standing under either theory.

<u>*Newton lacks standing.*</u> To establish standing, Newton must first show that he has suffered an injury in-fact. An injury in-fact must be both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Spokeo*, 136 S. Ct. at 1548 (an injury in-fact must be "real and not abstract"). And where, as here, the relief that is

sought is prospective, the injury must be ongoing or "*certainly* impending." *Clapper*, 568 U.S. at 409; *see also Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017).

Newton is unequivocal about the alleged injury that he seeks to remedy with his three causes of action. *First*, he claims to be entitled to relief under 18 U.S.C. § 925A because, as he repeatedly suggests, the FBI has "erroneously *denied* him a firearm" based on potentially prohibitive information contained in his criminal record. Compl. ¶¶ 29–31 (emphasis added); *accord id.* ¶¶ 1, 3–4, 7, 19, 38–40. *Second*, Newton claims that the FBI's "*denial* of" his handgun transaction violates his "Second Amendment rights by *preventing* [him] from possessing a firearm." *Id.* ¶ 33 (emphasis added); *accord id.* ¶ 6 (alleging that the FBI's "conduct" has "*completely denied*" him the ability to "acquir[e] firearms for self-defense in the home," and thus he "is suffering an ongoing Second Amendment violation so long as he is *prevented* from purchasing and possessing a firearm" (emphasis added)); *id.* ¶ 33 (alleging that the FBI has violated his "Second Amendment rights by *barring* him from possessing firearms" (emphasis added)). *And third*, Newton claims that the FBI violated the Fifth Amendment by *depriving* him of the right to "keep and bear arms" without due process. *Id.* ¶¶ 33–35, 46–49; *see also id.* ¶ 11 (alleging that Newton has "been and will continue to be adversely and directly harmed" because of Defendants' actions, "which *prevent* [him] from exercising [his] fundamental rights" (emphasis added)).

Each of these claims is built on a false premise: The FBI did not *deny* Newton's handgun transaction—or *prevent* him from purchasing or possessing a firearm—when it determined that his 1981 offenses were potentially prohibitive under 18 U.S.C. § 922(g)(9). The documents Plaintiffs attached to the complaint show this false premise. *See, e.g.*, *Daniels-Hall*, 629 F.3d at 998 ("[A court is not] required to accept as true allegations that contradict exhibits attached to the [c]omplaint."). As explained above, *see supra* p. 6, Newton's attempt to purchase a handgun from Fox Firearms in 2019 was "initially denied" because of a felony conviction listed in his state-maintained criminal record. Compl., ¶ 25. In July 2021, however, the FBI informed Newton that the basis for that denial had

been "resolved" in his favor. *Id.* ¶ 26, Ex. 1 at 1. That is to say, the FBI notified Newton nearly a year ago that his transaction was no longer "denied," *see* 28 C.F.R. § 25.6(c)(1)(iv)(C).[8]

But because the FBI was unable to determine whether Newton's 1981 offenses prohibited him from receiving the handgun, it placed his transaction in a "delayed" (or "open") status—as it was legally obligated to do. *See* 28 C.F.R. § 25.6(c)(1)(iv)(A), (B). As the Attorney General's regulations explain, the FBI must place a firearm transaction in a "delayed" status when the NICS unveils "potentially prohibiting records."[9] *Id.* §§ 25.2, 25.6(c)(1)(iv)(B). When a transaction is in a "delayed" status, the FBI will investigate the potentially prohibitive record and try to obtain "definitive information" that would enable it to make a final determination whether the prospective purchaser is in fact "disqualified from possessing a firearm by Federal or state law." *Id.* But placing a transaction in a "delayed" status is not legally equivalent to a "denial" under those regulations. *Id.* § 25.6(c)(1)(iv)(B), (C). And importantly, placing a transaction in a "delayed" status does not, as a matter of law, prevent an FFL from selling a firearm to the prospective purchaser. *See id.* § 25.2 ("An 'open' response"—*i.e.*, a "delayed" response—"does not prohibit an FFL from transferring a firearm after three business days have elapsed since the FFL provided to the system the identifying information about the prospective transferee."); *accord id.* § 25.6(c)(1)(iv)(B).

Newton's sole assertion of harm—*i.e.*, that the FBI has *prevented* him from purchasing or possessing a firearm—is therefore wrong on both the facts and the law. At the time this suit was filed, the FBI had not made a final determination whether Newton was or was not a prohibited person under 18 U.S.C. § 922(g)(9), and thus was not denying him the ability to purchase a firearm.

---

[8] Newton cannot establish an injury in-fact based on the initial denial of his handgun transaction, because only ongoing or "imminent future injury" (as opposed to past injury) can confer standing to pursue prospective relief. *Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009); *accord City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *see, e.g., Clark v. Lynch*, 213 F. Supp. 3d 1347, 1352 (D. Kan. 2016) (finding that the plaintiff lacked standing to seek injunctive relief because the FBI had already reversed the denial of his firearm transaction).

[9] Nothing in 18 U.S.C. § 922(t) or the Attorney General's regulations requires the FBI to send a "proceed" response to an FFL before the agency has made a final determination whether a prospective firearm transaction would violate federal or state law.

*See Gonzalez v. U.S. Immigration and Customs Enforcement*, 975 F.3d 788, 803 (9th Cir. 2020) ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*." (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008))). In fact, since July 2021, when the FBI notified Newton that the erroneously recorded felony conviction in his state-maintained criminal record had been resolved, the FBI has not prevented him from acquiring a firearm.

To the extent Plaintiffs allege anything to the contrary, the Court should not credit those allegations in determining whether Newton has established standing. Those allegations are legally unsound, *see Godecke*, 937 F.3d at 1205, and are contradicted by Plaintiffs' own evidence, *see, e.g.*, *Sprewell*, 266 F.3d at 988; *Johnson*, 2022 WL 789018, at *3. And because Newton has alleged no *well-pleaded* facts that tend to show that he has suffered an injury caused by Defendants' challenged conduct,[10] he has failed to demonstrate Article III standing.

*The Coalition lacks associational standing.* Unlike Newton, the Coalition does not allege to have standing in its own right. Rather, it claims to "bring[] this action on behalf of" "its members" who, it suggests, have been prevented from acquiring firearms as a result of Defendants' policies and practices. Compl. ¶ 11. To have "standing to bring suit on behalf of its members"—that is, to possess "associational standing"—an organization, like the Coalition, must show that "its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth*, 528 U.S. at 181.

---

[10] The Court also need not accept Plaintiffs' vague, conclusory allegation that "Defendants' policies and practices" have "expose[d]" Newton "to serious criminal penalties for" "exercising [his] fundamental rights." Compl. ¶ 11. Although Plaintiffs do not explain what "criminal penalties" or "fundamental rights" they are referring to, in context, this assertion appears premised on their repeated allegation that the FBI has barred Newton from acquiring a firearm. But as already explained, the FBI has done no such thing. *See supra* pp. 14–16. And in any event, Newton's "speculation" and "subjective apprehension" of nondescript criminal penalties does not establish a cognizable injury in-fact. *See Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

To satisfy the first prong of associational standing, "an organization suing as representative" must "include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *United Food and Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996); *see also Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003) (explaining the constitutional nature of this requirement). That requires an organizational plaintiff at the pleading stage to "make specific allegations establishing that at least one *identified member* had suffered or would suffer harm" as a result of the challenged actions. *Associated General Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194–95 (9th Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)).

The Coalition has failed to do so here. The complaint identifies only one Coalition member by name: Ralph Mark Newton. Compl., ¶ 10–11. But as already explained, Newton does not have standing in his own right to assert any of Plaintiffs' claims. *See supra* Section I.A. Aside from Newton, the complaint makes only vague references to the Coalition having "multiple" "members nationwide," including "gun owners, prospective gun owners, and others." Compl. ¶¶ 11, 36. But these allegations are insufficient to demonstrate that a Coalition member "is *immediately* in danger of sustaining some *direct* injury as the result of the challenged official conduct and the injury or threat of injury is both real and immediate, not conjectural or hypothetical." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002) (quoting *Lyons*, 461 U.S. at 102)); *see, e.g., Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (rejecting organization's claim of associational standing at the pleading stage because "the complaint did not identify any member of the group whom" the challenged action "prevented from selling or purchasing a" firearm); *Scocca v. Smith*, 2012 WL 2375203, at *4 (N.D. Cal. June 22, 2012) (rejecting organizations' claim of associational standing at the pleading stage because the "fact that the organizations have 'members who own, shoot, collect, buy and sell firearms' does not mean that the members have . . . suffered any injury as a result of Defendants' actions"). Therefore, the Coalition has failed to establish associational standing to assert any claims on behalf of its members.

In sum, because both Plaintiffs lack Article III standing, this Court should dismiss this case for lack of subject-matter jurisdiction.

## II.    Newton lacks statutory standing to seek relief under 18 U.S.C. § 925A.

Newton also fails to establish "statutory" standing to assert his claim under 18 U.S.C. § 925A. *See Head v. Wilkie*, 936 F.3d 1007, 1012 n.4 (9th Cir. 2019) ("Lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6) . . . ."). The statutory-standing inquiry—or the "zone of interests" test—addresses a threshold question that a court must resolve before it "can consider the merits of the claim." *East Bay Sanctuary Covenant v. Trump* (*East Bay*), 932 F.3d 742, 763 (9th Cir. 2018). The inquiry asks whether a statute "grants the plaintiff the cause of action that he asserts." *Id.* at 767 (quoting *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1302 (2017)); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (noting that this inquiry "applies to all statutorily created causes of action" unless Congress "expressly negate[s]" it). "In answering that question," a court must "presume that a statute ordinarily provides a cause of action 'only to plaintiffs whose interests fall within the zone of interests protected by the law invoked.'" *Bank of Am.*, 137 S. Ct. at 1302 (quoting *Lexmark Int'l*, 572 U.S. at 129); *see also Sierra Club v. Trump*, 929 F.3d 670, 700 (9th Cir. 2019) ("[T]he breadth of the applicable zone of interests varies according to the provisions of law at issue." (alteration adopted and citation omitted)).

"[W]hether a plaintiff comes within 'the zone of interests' is an issue that requires" a court "to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Bank of Am. Corp.*, 137 S. Ct. at 1302–03 (quoting *Lexmark Int'l*, 572 U.S. at 127); *see also Graden v. Conexant Systs. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007) ("Statutory standing is simply statutory interpretation," requiring a court to "look first at the text of the statute . . . ."). As in all matters of statutory interpretation, this court's statutory-standing "inquiry begins with the statutory text." *See Poulsen v. U.S. Dep't of Def.*, 994 F.3d 1046, 1050–51 (9th Cir. 2021) (citations omitted). And where "the text is clear"—as it is here—the court's inquiry should "end[] there as well." *Id.* (citation omitted); *accord Ahlman v. Barnes*, 20 F.4th 489, 493 (9th Cir.

2021) ("When the statute's language is plain, the sole function of the courts is to enforce it according to its terms." (citation omitted)); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, . . . 'judicial inquiry is complete.'" (citation omitted)).

Section 925A states that only a "person *denied a firearm* pursuant to subsection (s) or (t) of section 922" who is not prohibited from possessing a firearm, or whose denial was based on "the provision of erroneous information" by the NICS or a POC, may bring an action against the United States or a POC for "an order directing that the erroneous information be corrected or that the transfer be approved." 18 U.S.C. § 925A (emphasis added). As explained above, although Newton's handgun transaction was "initially denied" based on allegedly erroneous information in his state-maintained criminal record, Compl. ¶ 25, that information has been amended by the State of California, and Newton's initial denial has been resolved in his favor through the FBI's administrative appeals process. *See supra* pp. 7–8. That is to say, Newton's handgun transaction is no longer "denied." *See* 28 C.F.R. § 25.6(c)(1)(iv)(C). Instead, Newton's handgun transaction was placed in a "delayed" or "open" status, which does not prevent him from returning to Fox Firearms to purchase the same handgun that he sought to acquire in 2019. *See* 28 C.F.R. §§ 25.2, 25.6(c)(1)(iv)(B). On those facts, Newton is not a "person" erroneously "*denied* a firearm" under the Gun Control Act. Nor has he identified any "erroneous information [to] be corrected," or any "transfer" that needs to be approved—the only two remedies available under § 925A. Because Newton does not fit within the categories of individuals conferred a cause of action under § 925A, he lacks statutory standing to bring a claim under its provisions.

## III. Plaintiffs' Second and Fifth Amendment claims challenging Defendants' alleged "policy" fail to state a claim upon which this Court can grant relief.

Plaintiffs claim that Defendants have violated the Second and Fifth Amendments. Compl. ¶¶ 33–36, 42–49, Prayer for Relief ¶¶ 4–6. The gravamen of these claims is that the FBI and ATF have enforced against Newton and other Coalition members a "policy, practice, or custom" that requires prospective purchasers, "as a condition of acquiring a firearm," to prove that they are not

prohibited from firearm possession when their NICS background checks unveil potentially prohibitive information. *Id.* ¶¶ 36, Prayer for Relief ¶ 6.

But Plaintiffs' complaint contains no "factual matter" suggesting that this "policy" even exists. *See Twombly*, 550 U.S. at 556; *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) ("To survive a motion to dismiss," a "plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (cleaned up) (quoting *Iqbal*, 556 U.S. at 1949). "When a plaintiff seeks injunctive or declaratory relief specifically for the purpose of challenging an alleged policy or practice of a government agency," it cannot rely on mere "nebulous assertion[s] of the existence of [the] 'policy.'" *See Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 91 (D.D.C. 2013) (quoting *Haase v. Sessions*, 835 F.2d 902, 910–11 (D.C. Cir. 1987)). Nor can a plaintiff "nakedly assert" that a government agency has adopted a "policy . . . in order to go on a fishing expedition for evidence to support its allegation." *See People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*, 60 F. Supp. 3d 14, 20 (D.D.C. 2014); *cf. Alsaidi v. U.S. Dep't of State*, 292 F. Supp. 3d. 320, 328 (D.D.C. 2018) ("Plaintiff cannot use the APA to justify a fishing expedition for evidence that defendants were motivated . . . by a discriminatory policy that plaintiff believes exists.").

But that is precisely what Plaintiffs attempt to do here. Their complaint points to no document, order, regulation, statement, or any other concrete expression, written or unwritten, of the alleged "policy" from the FBI or ATF. Instead, Plaintiffs offer nothing more than wholly conclusory assertions, based on "information and belief," that Defendants have adopted and enforced the alleged "policy" against Newton and other Coalition members. *See* Compl. ¶ 36 ("On information and belief, Plaintiffs allege that the FBI and [ATF] have a policy, practice or custom . . . ."); *id.* ("Plaintiff FPC further alleges on information and belief that the FBI and [ATF] have enforced or applied this policy, practice, or custom to multiple FPC members . . . ."); *see also id.* ¶¶ 43, 48. Such allegations are insufficient to raise a plausible inference that Defendants have actually engaged in the alleged conduct. *See, e.g.*, *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *2 (N.D. Cal. March 19, 2018) ("A conclusory allegation based on information and belief remains insufficient under" the plausibility standard of *Iqbal*

and *Twombly*. "An allegation made on information and belief must still be 'based on factual information that makes the inference of culpability plausible . . . .'" (quoting *Arista Record LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)); *Smith v. United Airlines, Inc.*, 673 F. App'x 720, 722 (9th Cir. 2016) (unpublished) ("Given the paucity of factual detail, the contradicting statements in the [complaint], and that plaintiffs' theory rests entirely 'upon information and belief,'" the plaintiffs have "not state[d] a plausible claim for relief.").

But not only are Plaintiffs' claims challenging Defendants' alleged "policy" insufficient on their face, the only relevant *facts* contained in their pleadings tend to *disprove* that the "policy" exists. *See, e.g.*, *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1320–21 (S.D. Cal. 2018) (finding that the plaintiffs had failed to "plausibly show the existence of [an] unwritten [agency] policy" because, *inter alia*, the complaint referenced facts that "defeat[ed] the inference" that such a policy existed). As explained above, *see supra* pp. 7–8, the FBI uncovered information in Newton's criminal record that potentially prohibits him from possessing a firearm under 18 U.S.C. § 922(g)(9). If Defendants enforced a "policy" like the one that Plaintiffs allege, one would expect that Newton would have to prove that he is not a prohibited person under § 922(g)(9) before he would be able to acquire a firearm. *See* Compl. ¶ 36, Prayer for Relief ¶ 6. But that is not the case. Under the Attorney General's regulations, Newton is currently able to purchase a firearm from an FFL, *see* 28 C.F.R. §§ 25.2, 25.6(c)(1)(iv)(B), despite the fact that Newton has not provided the FBI with evidence sufficient to nullify the potentially prohibitive information in his criminal record, *see supra* pp. 10–11.

Therefore, because Plaintiffs have failed to allege any facts upon which this Court could draw a "reasonable inference" that Defendants have actually adopted or enforced the alleged "policy," Plaintiffs' constitutional claims fail to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678.[11]

---

[11] In any event, Plaintiffs have not stated a claim for relief against ATF, because they plead no facts suggesting that ATF is responsible for reviewing a prospective firearms purchaser's background check. "Nowhere" in the Brady Act or the Attorney General's regulations governing "the NICS is ATF vested with responsibility for reviewing or determining a prospective buyer's eligibility"; instead, "that responsibility is vested solely in the FBI." *Alexander v. FBI*, 2020 WL 999802, at *2 (E.D. Mo.

## CONCLUSION

For the foregoing reasons, this Court should dismiss this case under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction or, in the alternative, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: April 25, 2022

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

---

March 2, 2020) (citing 28 C.F.R. §§ 25.5, 25.6) (holding that the plaintiff's "assertion that he was wrongly denied" a firearm "does not state a claim against ATF upon which relief may be granted," and "dismiss[ing] ATF from the suit").